## JENNINGS *v.* JOHNSON.[1]

*(Circuit Court, D. Maine. April 26, 1888.)*

1. TRADE-MARKS—PROPRIETARY MEDICINE LABELS—INFRINGEME...

"Johnson's Anodyne Liniment" had been sold for more than 50 years in bottles of a certain size and style, having a blue wrapper, and a purplish label bearing a certain description and a *fac simile* of the name of A. Johnson, the original proprietor. Defendant's article was called "Johnson's Anodyne Liniment," and appeared in the same size bottles, with a similar blue wrapper, and a label differing but little from that of the genuine article, except in a not very marked difference in color, and bore the *fac simile* of defendant's name, "F. E. Johnson." There was evidence of actual deception. *Held,* that defendant should be restrained from the sale of his article in such form.

2. SAME—RIGHT TO USE LABEL.

Plaintiff having been a member of the firm which prepared the liniment, and having purchased its business, may properly state on his labels that the liniment is prepared by such firm.

3. SAME—ACTION FOR INFRINGEMENT.

Plaintiff having become sole proprietor of the business of preparing the liniment from the original proprietor through several mesne purchases, he has such a proprietary right as entitles him to maintain the suit for an injunction.

In Equity.

Suit by Stephen Jennings against Frank E. Johnson to restrain the sale of liniment in a form resembling that in which plaintiff's liniment is sold.

*Causten Browne* and *A. P. Browne,* for complainant.

*W. H. Clifford,* for defendant.

COLT, J. The plaintiff in this case is the owner of a remedy known as "Johnson's Anodyne Liniment," and this suit is brought to enjoin the defendant from putting up and offering for sale a liniment of his own manufacture, in a form so closely resembling that of the plaintiff's article that the public are liable to be deceived thereby, and a portion of the plaintiff's business unlawfully taken away. The liniment was first prepared by Abner Johnson, about the year 1810. In 1846 he took his son, Thomas Johnson, into partnership. In 1848 the business was conducted by Thomas Johnson and his brother, I. S. Johnson, the father having died that year. In 1849, Thomas Johnson died, and the business was then carried on by I. S. Johnson until 1866, when he sold a part of his interest to the complainant. This continued until 1876, when the complainant bought out the entire interest of I. S. Johnson, and became the sole proprietor of the business.

Upon the evidence I think the complainant has shown such a proprietary right to this business, and to the use of the bottles, labels, and wrappers with which this medicine has been associated and identified, as entitles him to maintain this action against this defendant, and therefore

---

[1] Publication delayed because of failure to receive copy of opinion at the time it was filed.

the first defense of want of sufficient title in the complainant falls to the ground.

Upon the question of injunction I entertain no doubt. A comparison of the bottles, wrappers, and labels make it apparent that the public would be likely to be deceived in the purchase of defendant's liniment for the genuine Johnson's. Except in the color of the label, the articles look almost identical. The genuine Johnson's Anodyne Liniment has for more than half a century made use of a certain size and style of bottle, a wrapper of a somewhat striking blue color, and a purplish-colored label bearing a certain description, and having a *fac simile* of Dr. Johnson's name written on it. The defendant's liniment, which is also called "Johnson's Anodyne Liniment," appears in the same size bottles, with a similar blue wrapper, and with a label which differs but little from the plaintiff's, except in a not very marked change in color. The *fac simile* of the name signed on the label is F. E. Johnson, in place of A. Johnson. The evidence goes to prove that the public are actually deceived into buying one liniment for the other, and a comparison of the form in which both liniments are put up shows that the object that the defendant must have had in the imitation which appears was to deceive the public into buying his liniment for the genuine Johnson's. Clearly he should be enjoined from such unlawful use of that which another has first appropriated.

The plaintiff Jennings was one of the firm of I. S. Johnson & Co. In stating on the label that the liniment is prepared by I. S. Johnson & Co., he merely retains the name of the firm of which he was a member. I cannot see how the public are deceived or injuriously affected by such a course. It is not uncommon, under such circumstances, to retain the old firm name. The facts in the case of *Medicine Co.* v. *Wood*, 108 U. S. 218, 2 Sup. Ct. Rep. 436, were quite different. In the present case I am satisfied that a decree should be entered for the complainant, and it is so ordered. Decree for complainant.